UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:08-cr-00090-RJL |
| | : | Judge Richard Leon |
| TERRY WILLIAMS, | : | Motions Hearing: July 11, 2008 |
| | : | |
| Defendant. | : | |
| _____ | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
TO SUPPRESS EVIDENCE AND STATEMENTS**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes Defendant's Motion to Suppress Evidence and Statements. In support of its opposition, the Government relies on the following points and authorities and such points and authorities as may be cited at a hearing on the motion.

**FACTUAL BACKGROUND**

On March 5, 2008, officers of the Metropolitan Police Department went to 5020 Just Street, N.E., in Washington, D.C. to execute a Superior Court search warrant on the home of defendant Terry Williams. The warrant was based on information from a confidential informant who knew that the defendant sold crack cocaine and had seen the defendant with a large amount of crack cocaine in the Just Street address. When the officers arrived, they saw the defendant standing outside of his residence. The defendant was detained and the officers knocked and announced their presence at the front door of the row house. When they heard no response, the officers forced entry. While the officers prepared to search the house, the defendant told them, "I

know what you are looking for.  The black bag is in the closet.  Just don't tear up my house, please."

The officers found a "Nautica" carry on/duffle bag on the floor of the living room closet.  The bag was opened and from inside it the following items were recovered: 12 clear ziplock bags that contained 53 grams of crack; 4 ziplock bags and one plastic wrap that contained 15 grams of heroin; two plastic wraps that contained 58 grams of crack; a clear zip bag with an apple logo that contained numerous empty clear ziplock bags; a straw and a razor blade with white residue and two scales; a bottle of Quinine; a box of sandwich bags; a plastic bag with hundreds of empty ziplocks; and a plastic bag with rubber gloves and a scale.  A further search of the defendant's house resulted in the recovery of $10,050 in the bottom of the stove, as well as mail in the defendant's name from the bedroom and photographs of the defendant from the living room.  After the defendant was placed under arrest, $670 was recovered from his front pants pockets.

Defendant Williams now moves to suppress all of the tangible evidence and statements in this case.

## ARGUMENT

### I. THE SEARCH OF DEFENDANT'S RESIDENCE AT 5020 JUST STREET, N.E., WAS CONDUCTED PURSUANT TO A VALIDLY OBTAINED WARRANT

**A. There Is No Basis for Review**

The defendant claims that evidence was obtained in this case pursuant to an unlawfully obtained search warrant and that the search of his residence was not based on probable cause because the affidavit did not sufficiently spell out the basis of knowledge or reliability of the confidential informant (See Defense Motion at 8).  Put simply, defendant's argument is based on

incorrect facts and a misapplication of the law.  The search of defendant's residence was pursuant to a  validly obtained search warrant for which there is no reasonable basis to challenge, and therefore any evidence obtained as a result of that search should not be suppressed.

If, as in this case, the search in question was the product of a warrant obtained from a neutral and detached magistrate and officers acted in good faith in executing the warrant, evidence seized will not be suppressed even if the warrant later proves to be defective.  United States v. Leon, 468 U.S. 897, 907 (1984).   Unless "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth" suppression is not an appropriate remedy.  Id.  As a practical matter, following Leon, the only challenge a defendant might hope to successfully mount on a search warrant affidavit is that the affidavit contained intentional (or reckless) misrepresentations or omissions of material fact. See Franks v. Delaware, 438 U.S. 154 (1978).  In order to obtain suppression of evidence seized pursuant to a search warrant assertedly based on a false affidavit, a defendant must show that (1) the affidavit contained false statements or omissions; (2) the statements or omissions were material to the issue of probable cause; and (3) the false statements or omissions were made knowingly and intentionally, or with reckless disregard for the truth. Id. at 155-56. See United States v. Richardson, 861 F.2d 291, 293 (D.C. Cir. 1988), cert. denied, 489 U.S. 1058 (1989); United States v. Pace, 898 F.2d 1218, 1232 (7th Cir.), cert. denied, 110 S. Ct. 3286 (1990).   The defendant does not assert that the search affidavit contained false statements or omissions much less that the false statements or omissions were material to the issue of probable cause.  In addition, there is not allegation, much less a supported showing, that the affidavit was prepared with "reckless disregard for the truth."

Since the defendant has failed to even allege facts that would warrant suppression there are no factual determinations for the court to resolve and the defendant should not be entitled to a hearing on this issue. Before a hearing is required under Franks, the defendant must make a "threshold showing" that the affidavit is false in some material respect:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portions of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

Franks v. Delaware, supra, 438 U.S. at 171. See United States v. Gaston, 357 F.3d 77 (D.C. Cir. 2004) (allegations not sufficiently specific to warrant Franks hearing). In no way has the defendant met this burden, and the inquiry need go no further. The defendant has merely pressed a probable cause argument without first meeting this necessary threshold for a warrant review.

**B. The Warrant Was Supported by Probable Cause**

However, even if the initial Franks test were met, the defendant's probable cause argument would also fail. The search warrant issued for appellants' residence was supported by an affidavit indicating that a confidential police informant of demonstrated reliability had personally observed a large quantity of a white rock-like substance, consistent with crack-cocaine, in the defendant's home within the preceding seventy-two hours. The defendant

contends that the warrant affidavit failed to establish probable cause for the search. This claim is without merit.

First, the defendant claims that the affidavit provided insufficient detail about the basis of the informant's observation. However, the affidavit established that the informant personally observed what the informant knew to be crack-cocaine in the defendant's home, "an inherently reliable method of obtaining such information." United States v. Davis, 617 F2d 677, 693 (D.C. Cir.), cert. denied, 445 U.S. 967 (1980). See United States v. Laws, 808 F.2d 92, 101 (D.C. Cir. 1986) (firsthand observation by informant is "highly preferable" to information acquired indirectly).

The affidavit also provided ample reason for the magistrate to credit the reliability of the informant, by virtue of the informant's "track record" of supplying reliable information–and no unreliable information–to law enforcement in the past, which has led to the seizure of large amounts of crack-cocaine, marijuana, and firearms, and also resulted in numerous arrests. See Davis, 617 F.2d at 693 (one method of establishing informant's veracity is through history of providing police with accurate information); United States v. Gabrio, 295 F. 3d 880, 883 (8th Cir. 2002) (statement in affidavit that informant had provided reliable information on at least two prior occasions and had returned stolen property to law enforcement established reliability), cert. denied, 123 S.Ct. 390 (2002); United States v. Fairchild, 940 F.2d 261, 264 (7th Cir. 1991) (detective's assertion of personal knowledge of informant's veracity, combined with informant's personal observation of contraband, established that tip was credible); United States v. Seta, 669 F.2d 400, 403 (6th Cir. 1982) (trustworthiness of an informant may be satisfied by a recital of the prior occasions on which the informant proved credible). The affidavit also made clear that the

informant had previously provided reliable information specifically regarding narcotics and firearms, which strengthened the basis for crediting the informant's observation in this case. See United States v. Smith, 182 F.3d 473, 479 (6th Cir. 1999) (key consideration is whether informant has provided reliable information in the past about the same type of criminal activity that is the subject of the warrant).

In determining whether an affidavit establishes probable cause to support a search, the magistrate or reviewing court to which the affidavit initially is presented must examine the "totality of the circumstances" presented in the affidavit to determine whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). In making this "practical, common-sense decision," id., the magistrate must eschew technical requirements in favor of probabilities. Id. at 231.

The defendant dismisses or ignores the relevance of the informant's "track record" in establishing the sufficiency of the informant's observation and the reliability of the tip. However, under the "totality of the circumstances" analysis of Gates, an affidavit need not corroborate or include extensive details about a tip, if the tip itself is based on personal observation and the source of the tip is, as here, shown to be reliable. See Smith, 182 F. 3d at 479-80 (where informant has proven track record, corroboration of tip is not essential as long as there is sufficient indication of his basis of knowledge (e.g., firsthand observation)).

Even when a warrant affidavit does not establish a direct link between narcotics trafficking and the suspected dealer's home, courts have found probable cause to search that home because "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." United States v. Terry, 911 F.2d 272, 275 (9th Cir. 1990). See also United States v. Feliz,

182 F.3d 82 (1st Cir. 1999) (upholding warrant to search a known drug dealer's residence without any demonstrated nexus between drug dealing and the defendant's home because the issuing court reasonably supposed that a long-time, successful drug trafficker kept in his home "documents showing the names and telephone numbers of suppliers, as well as accounts showing the monies paid and collected" and the money that was collected).  In this case, a reliable informant's first-hand observation placed the narcotics not only in the defendant's hand, but also in his home.  This sufficiently established the probable cause required to search the defendant's Just Street residence.

### C. The Warrant Was Sufficiently Particular

In addition, the defendant's base assertion that, for the warrant in this case, "particularity was impossible" (See Defense Motion at 7) is simply without merit or support.  The warrant and incorporated affidavit were extremely detailed, thereby curtailing the officers' discretion.  It is well settled that items to be seized pursuant to a search warrant must be described with particularity to prevent the seizure of one thing under a warrant describing another. The degree of specificity required in a warrant is flexible, depending upon the type of items to be seized and the crime involved. Thus, a description is valid if it is as specific as the circumstances and the nature of the activity under investigation permit. See United States v. Blair, 214 F.3d 690, 697 (6th Cir. 2000).

Here, the warrant described the items to be seized as, among other things, "narcotics, paraphernalia related to the preparation, packaging and use of narcotics, . . . books, records, receipts, tally sheets, money orders, bank records, pagers, cellular phones (and numbers contained therein)." Language of this type, in warrants aimed at evidence of drug activity, has

been widely approved. See, e.g., United States v. Reeves, 210 F.3d 1041, 1043, 1046-47 (9th Cir. 2000) (upholding against a particularity challenge warrant that authorized the seizure of "methamphetamine, a controlled substance, packaging materials, scales, . . . and other items related to the manufacturing and distribution of controlled substances, in particular, methamphetamine") (ellipsis in original); United States v. Dickerson, 166 F.3d 667, 694 (4th Cir. 1999) (warrants authorizing search simply for evidence of violation of broad criminal statutes or general criminal activity such as wire fraud or tax evasion may be overbroad, but "[i]n contrast, a warrant authorizing a search for evidence relating to a specific criminal activity such as narcotics . . . is sufficiently particular"), reversed in part on other grounds, 530 U.S. 428 (2000); United States v. Spears, 965 F.2d 262, 277 (7th Cir. 1992) (upholding against particularity challenge warrant that authorized the seizure of "controlled substances and other drug related paraphernalia, and materials for packaging controlled substances"); United States v. Smith, 918 F.2d 1501, 1507-08 (11th Cir. 1990) (upholding against particularity challenge warrant that authorized the seizure of "cocaine, documents, letters, photographs, business records, and other evidence relating to narcotics trafficking"). The warrant in this case specifically targeted the records and paraphernalia related to drug-trafficking activities and therefore did not violate the particularity requirement of the Fourth Amendment.

    **D. The Police Reasonably Relied on the Warrant's Validity**

Moreover, even if the affidavit failed to establish probable cause–which it does not–the defendant's challenge to the affidavit and ensuing demand for suppression nonetheless fails because the police reasonably relied upon the warrant's validity. Where a warrant erroneously issues despite a lack of probable cause in the supporting affidavit, the court should not suppress

the evidence obtained during the execution of that warrant if the police department acted in good faith upon the warrant. United States v. Leon, 468 U.S. 897, 907 (1984). Where a warrant erroneously issues despite a lack of probable cause in the supporting affidavit, the "marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of suppression." Id. at 922. The same principle applies to a warrant–unlike the warrant here–that is overbroad. United States v. Maxwell, 920 F.2d 1028, 1034 (D.C. Cir. 1990) ("Although we conclude that the warrant was overly broad, we nonetheless decline to order the suppression of the evidence seized pursuant to it because we believe that the agents in this case reasonably relied on the warrant in good faith.").

In this case, not only did the officers conducting the search rely on a warrant valid on its face, but they had ample reason to believe that the information supplied by the confidential informant was as reliable as it had been in the past, and their search was specifically targeted to the documents and materials associated with trafficking in narcotics.

Having considered all of these factors, the judge signed the warrant and the officers acted in good faith in relying on the finding by the court. The defense has articulated no reason to even suggest that the officers acted in bad faith and the evidence, therefore, should not be suppressed.

II. **DEFENDANT WILLIAMS'S STATEMENTS WERE NOT ELICITED IN VIOLATION OF HIS FIFTH AMENDMENT RIGHTS AND SHOULD NOT BE SUPPRESSED**

Defendant Williams also moves to suppress statements made at or about the time of the search of his residence. After the defendant had been detained and the officers were preparing to search the house, the defendant blurted out, "I know what you are looking for. The black bag is in the closet. Just don't tear up my house, please." Defendant Williams now seeks to suppress these statements on the ground that they were elicited while he was under "custodial interrogation" and before he waived his Miranda[1]/ rights. This contention is without merit.

"[A] warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." Michigan v. Summers, 452 U.S. 692, 705 (1981). The fact that a person has been lawfully seized under Summers for purposes of the Fourth Amendment, however, does not mean that the occupant is in "custody" for purposes of the Fifth Amendment and Miranda. To the contrary, "[a] person detained during the execution of a search warrant is normally not in custody for Miranda purposes." United States v. Saadeh, 61 F.3d 510, 520 (7th Cir.), cert. denied, 516 U.S. 990 (1995). The Summers seizure in this case falls within the normal rule that such a seizure is not the equivalent of an arrest that implicates Miranda. See Saadeh, 61 F.3d at 520.

The warrant in this case authorized a search for both drugs and firearms, and thus raised serious safety concerns for the officers executing the warrant. See United States v. Payne, 805 F.2d 1062, 1065 ("[I]t has uniformly been recognized that substantial dealers in narcotics possess firearms and that such weapons are as much tools of the trade as more commonly recognized drug paraphernalia."). Given these safety concerns, the officers' decision to detain Williams while they executed the search warrant was reasonable. See Summers, 452 U.S. at 702-03 (recognizing

---

[1]/ 384 U.S. 436 (1966)

the execution of a warrant to search for drugs "may give rise to sudden violence or frantic efforts to conceal or destroy evidence"); Muehler v. Mena, 544 U.S. 93, 100 (2005) (police acted reasonably in handcuffing suspect for two to three hours while the police searched the home); United States v. Bennett, 329 F.3d 769, 774 (10th Cir. 2003) ("Police may use firearms and handcuffs as part of a permissible detention when they reasonably believe it is necessary for their safety and protection."). Because these actions were reasonable, they did not elevate the Summers seizure in this case into an "arrest" for Fourth Amendment purposes or, by extension, into "custody" for Fifth Amendment purposes. See United States v. Fountain, 2 F.3d 656, 666 (6th Cir. 1993) (safety concerns and concern that drug evidence would be destroyed justified police decision to handcuff and force occupants of house to lay on floor during execution of search warrant), conviction vacated in part on other grounds, 953 F. Supp. 836 (E.D. Mich. 1996). See also United States v. Neff, 300 F.3d 1217, 1221-22 (10th Cir. 2002) (use of handcuffs during Terry stop justified by concern that defendant was armed); United States v. Gil, 204 F.3d 1347, 1350-51 (11th Cir. 2000) (detention of handcuffed defendant for 75 minutes in police car was permissible Terry stop); United States v. Gale, 952 F.2d 1412, 1416 n. 4 (D.C. Cir. 1992) (defendant was not under formal arrest, and thus not in custody for Miranda purposes, when police, acting on an informant's tip, pulled defendant over and ordered him out of his car).

Defendant's argument that he was in custody relies exclusively on the fact that he was detained while the officers conducted a search of his home. However, the custody inquiry looks to the "totality of the circumstances," not to any single factor. United States v. Burns, 37 F.3d 276, 280 (7th Cir. 1994). This Court has specifically recognized authority to the effect that "handcuffing does not automatically constitute custody, but is merely one factor to be

11

considered." United States v. Gaston, 357 F.3d 77, 82 (D.C. Cir. 2004) (citing United States v. Leshuk, 65 F. 3d 1105, 1109-10 (4th Cir. 1995)).

Here, the totality of the circumstances shows that the defendant was not in custody under Miranda at the time he offered his statements. The officers announced that they were at the residence to conduct a search warrant, and at the time of the statements they had not told the defendant that he was under arrest. Cf. United States v. Newton, 369 F.3d 659, 677 (2d Cir. 2004) (finding of custody supported by fact that defendant did not know the officers were present to search his home rather than arrest him). No physical force was exercised on the defendant and there is no evidence to suggest that any of the officers brandished weapons. Williams made his statements just outside his own home, which is "not the type of coercive setting normally associated with custodial interrogation." See United States v. Sutera, 933 F.2d 641, 647 (8th Cir. 1991).

In addition, Miranda is implicated only when two circumstances are both present: the defendant is in custody *and* under interrogation. If a suspect is in custody, but volunteers a statement in the absence of interrogation, there is no Miranda issue even if the suspect was not given any advice of rights. Miranda, 384 U.S. at 478; Rhode Island v. Innis, 446 U.S. 291, 300 (1980). Interrogation includes not only direct questioning, but "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response." Innis, 446 U.S. at 301. Even if defendant Williams were in custody–which he was not–at the time that he directed the police where to look and asked them to not "tear up" his house, his statements were made spontaneously, not in response to any questioning from law

12

enforcement. Because the defendant's statements were not directly elicited by the "words or actions" of the police, Miranda does not apply in this situation.

The defendant also posits that, even if Miranda is not an issue, his statements should still be suppressed because they were involuntary. However, the record instead reveals that his statements were made voluntarily. See Lego v. Twomey, 404 U.S. 477, 489 (1972) (holding that in order to use a defendant's statements at trial, the prosecution must show by a preponderance of the evidence that they were voluntary). The test for voluntariness is whether, under the totality of the circumstances, "coercive police activity" has "overborne" a suspect's "will." Colorado v. Connelly, 479 U.S. 157, 167 (1986). In making this determination, a district court must examine "the totality of all the surrounding circumstances – both the characteristics of the accused and the details of the interrogation." Schneckloth v. Bustamonte, 412 U.S. 218, 226, 93 S. Ct. 2041, 2047, 36 L. Ed.2d 854 (1973). Relevant factors include: the youth of the accused; his lack of education; or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as the deprivation of food or sleep. United States v. Rodney, 956 F.2d 295, 297 (D.C. Cir. 1992). The evidence in this case does not in any way show that defendant's will was overborne. The defendant identifies no coercive police activity, and the circumstances of his statements do not suggest that they were the product of coercive police activity, or were in any other way involuntary. Accordingly, the defendant's motion to suppress his statements should be denied.

## **CONCLUSION**

WHEREFORE, for the reasons stated herein, Defendant's Motion to Suppress Tangible Evidence and Statements should be denied.

                                                Respectfully submitted,

                                                JEFFREY A. TAYLOR
                                                United States Attorney
                                                Bar No. 498610

By: _____
CHARLES NEIL FLOYD
Assistant United States Attorney
Bar No. 97-219
555 Fourth Street, N.W., Room 4243
Washington, D.C. 20530
(202)305-2195